Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| SUPERMERCADOS ECONO, INC.<br><br>Demandante - Peticionario<br><br>v.<br><br>CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES; MUNICIPIO DE DORADO<br><br>Demandados - Recurridos | KLCE202400852 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil Núm.: D AC2018-0083 (502)<br><br>Sobre: Cobro de Dinero, Incumplimiento de Contrato |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de septiembre de 2024.

El Tribunal de Primera Instancia ("TPI") dejó sin efecto una orden de ejecución de sentencia mediante la cual un municipio satisfaría la misma en seis meses a través del desvío de fondos que de otro modo el Centro de Recaudación de Ingresos Municipales (CRIM) le remitiría al municipio. Ante el plan de pago aprobado por el Departamento de Justicia el 14 de junio de 2024, con el fin de satisfacer la sentencia mediante pagos anuales por siete años, hemos determinado no intervenir con la discreción ejercida por el TPI al respecto.

I.

El 30 de junio de 2023, notificada el 6 de julio de 2023, este Tribunal dictó una *Sentencia*,[1] mediante la cual se determinó que procedía una reclamación de Supermercados Econo, Inc. ("Econo"), contra el Municipio Autónomo de Dorado (el "Municipio"). En esencia, se resolvió que el Municipio debía devolverle a Econo la

---

[1] KLAN202300365.

suma de $1,000,000.00, más intereses legales. Se instruyó al TPI a que, de ser necesario, podría ordenar al CRIM que remitiera determinadas remesas que de otra forma irían al Municipio. La Sentencia de este Tribunal advino final y firme.

El 17 de abril de 2024, el Municipio instó una *Moción en Relación [con] Ejecución de Sentencia*. En síntesis, informó que, de conformidad con la Ley 66-2014 ("Ley 66"), 3 LPRA sec. 9109 *et seq.*, realizaba trámites para obtener la aprobación del Secretario de Justicia de un plan de pago que propuso para satisfacer el pago de la sentencia.

Por su parte, el 3 de mayo, Econo presentó una *Moción Solicitando Orden de Ejecución de Sentencia.*

El 17 de mayo, notificada el 22 de mayo, el TPI dictó una *Orden de Ejecución*; se le ordenó al Director Ejecutivo del CRIM, Sr. Reinaldo Paniagua Látimer, a que, en un término no mayor de treinta (30) días, le remitiera a Econo una sexta parte de lo adeudado, más intereses a la fecha de pago, a razón de 5.5% sobre el balance principal adeudado. Subsecuentemente, los pagos mensuales de una sexta parte del total adeudado continuarían hasta el saldo total de la deuda.

El 23 de mayo, el Municipio presentó una *Urgente Moción Solicitando que se Deje sin Efecto Orden de Ejecución de Sentencia.* De entrada, sostuvo que el CRIM carecía de la facultad de remitir remesas a una entidad privada como lo es Econo. Añadió que no procedía la orden de ejecución de sentencia debido a que el Secretario de Justicia no se había pronunciado en torno a la solicitud de un plan de pago sometido al amparo de la Ley 66, *supra.*

El 27 de junio, el CRIM interpuso una *Comparecencia Especial.* En lo pertinente, solicitó que se le relevara del cumplimiento con la orden de embargo, por entender que no

procedía el embargo de fondos públicos, incluidos los fondos municipales, como método de pago de la sentencia.

Por su parte, el 28 de junio, el Municipio interpuso una *Moción Para que Se Tome Conocimiento Judicial y Reiterando "Urgente Moción Solicitando que Se Deje Sin Efecto Orden de Ejecución de Sentencia"* (la "Moción"). Informó que se había recibido la autorización del Secretario de Justicia del plan de pago propuesto, de conformidad con la Ley 66, *supra*. Además, reiteró que debía dejarse sin efecto la orden de ejecución de sentencia. El Municipio acompañó la Moción con una copia de la carta de autorización del Secretario de Justicia del plan de pago de sentencia.

El 2 de julio, Econo se opuso a la Moción; arguyó que no aplicaba la Ley 66, *supra*, debido a que entre las partes existía previamente un acuerdo sobre un "plan de pago" específico en caso de que se tuviese que devolver el dinero en controversia. Añadió que la doctrina de la ley del caso impedía que se dejara sin efecto la orden y el mandamiento de ejecución debido a que la sentencia indicaba que se podría ordenar al CRIM remitir las remesas del Municipio a Econo.

El 11 de julio, el TPI notificó una *Resolución y Orden* (la "Orden"), mediante la cual dejó sin efecto su previa orden sobre ejecución de sentencia. Además, tomó conocimiento judicial del plan de pago aprobado por el Secretario de Justicia el 14 de junio de 2024, y ordenó el cumplimiento con el referido plan de pago en las fechas indicadas en el mismo.

No conteste con el resultado, el 13 de julio, Econo solicitó la reconsideración de la Orden, lo cual fue denegado por el TPI mediante una *Resolución* notificada el 23 de julio.

Inconforme, el 6 de agosto, Econo presentó el recurso que nos ocupa; formula el siguiente señalamiento de error:

Erró el Tribunal de Primera Instancia al dejar sin efecto la Orden de ejecución dictada y adoptar un plan de pagos que contradice lo ordenado por la Sentencia de este Tribunal.

Luego de que le ordenáramos al Municipio mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar la Orden, el Municipio presentó una *Oposición a Expedición de Auto de Certiorari en Cumplimiento de Orden*. Disponemos.

II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders, et al v. BBVAPR*, 185 DPR 307, 337-338 (2012), *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Contrario al recurso de apelación, el tribunal revisor tiene discreción para decidir si expide o no el *certiorari*. Ahora, la discreción no es irrestricta y debe ejercerse de forma razonable, procurando siempre una solución justa. *Medina Nazario*, 194 DPR en la pág. 729; *IG Builders*, 185 DPR a la pág. 338; *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

La Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, indica las resoluciones u órdenes interlocutorias susceptibles de revisión por el Tribunal de Apelaciones mediante *certiorari*. Ahora bien, la citada regla no se extiende a las resoluciones post-sentencia. Ello porque estas determinaciones no pueden ser revisadas en apelación, pues no habrá sentencia posterior que se pueda apelar. *IG Builders*, 185 DPR a la pág. 339. Por tanto, en este caso, al solicitarse la revisión de una determinación post-sentencia, la Regla 52.1, *supra,* no afecta nuestra autoridad para expedir el auto solicitado. Adviértase que el asunto traído ante nuestra consideración no es susceptible de revisión posterior en el contexto de la apelación de una sentencia.

Así pues, al evaluar la procedencia de la expedición de un auto de *certiorari* post-sentencia, debemos recurrir a la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La precitada regla establece los criterios que se deben examinar al determinar si expedimos un auto de *certiorari*:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### III.

Nuestra Constitución le concede a la Asamblea Legislativa amplios poderes para aprobar leyes en protección de la vida, la salud y el bienestar del Pueblo, Art. II, Sec. 19, Const. ELA, LPRA, Tomo 1; véase, además, *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 84-85 (1998). En el ejercicio de dicha facultad, conocida como "poder de razón del Estado ("police power"), la Asamblea Legislativa puede prohibir o reglamentar ciertas actividades con el propósito de fomentar o proteger la paz pública, moral, salud y bienestar general de la comunidad. *Rodríguez Casillas v. Colegio*, 202 DPR 428, 339-340 (2019); *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 36-37 (2010).

Cónsono con lo anterior, la Asamblea Legislativa promulgó la Ley 66, *supra*, a los fines de declarar un estado de emergencia fiscal

gubernamental, adoptar un plan para manejar las consecuencias de la crisis fiscal y económica que atraviesa Puerto Rico y establecer medidas de reducción de gastos. Véase, Exposición de Motivos de la Ley 66-2014, *ante*. Su aprobación le permite al Estado Libre Asociado de Puerto Rico contar con liquidez suficiente para poder pagar su nómina y sufragar servicios esenciales, mediante la implantación de medidas de reducción de gastos y estabilización fiscal. *AAA v. UIA*, 200 DPR 903, 921 (2018). Resaltamos que este estatuto tiene "primacía sobre cualquier otra ley". Véase, Artículo 3 de la Ley 66, 3 LPRA sec. 9102.

En lo pertinente al caso de referencia, la Ley 66, *supra*, estableció como política pública evitar el pago de sumas globales que puedan impactar negativamente la estabilidad fiscal y operacional del Estado, incluyendo los gobiernos municipales. En específico, el Artículo 28 de la Ley 66, 3 LPRA sec. 9141, dispone lo siguiente:

Artículo 28.-Aplicabilidad y planes de pago.

Ante el impacto negativo a la estabilidad fiscal y operacional del Estado Libre Asociado de Puerto Rico, incluyendo los gobiernos municipales, que conllevaría el pago mediante una suma global, **las disposiciones de este Capítulo serán aplicables a todas las sentencias finales y firmes**, con excepción de las relacionadas con expropiaciones, **que a la fecha de la aprobación de esta Ley se encuentren pendientes de pago**, **así como a las que durante el transcurso de la vigencia de esta Ley se emitan, donde las agencias, instrumentalidades, corporaciones públicas, los municipios o el Estado Libre Asociado de Puerto Rico estén en la obligación de efectuar un desembolso de fondos con cargo al Fondo General, el fondo de la corporación pública que se trate, o con cargo al presupuesto municipal**, según fuera el caso. **En aquellos casos donde las agencias, instrumentalidades, corporaciones públicas, los municipios o el Estado Libre Asociado de Puerto Rico, o funcionarios acogidos a los beneficios de esta Ley, estén en la obligación de efectuar un desembolso de fondos con cargo al Fondo General, al fondo de la corporación pública que se trate o con cargo al presupuesto municipal, según fuera el caso, y no exista un plan de pagos previamente acordado por escrito y aprobado por el Tribunal, se aplicarán las disposiciones contenidas en este Artículo**. Ello con independencia de la naturaleza del fallo, o si se tratare de una transacción administrativa, extrajudicial

o judicial. **El Secretario de Justicia evaluará el plan de pago aplicable conforme a la cuantía de la sentencia**, luego de lo cual solicitará una certificación de disponibilidad de fondos al Director de la Oficina de Gerencia y Presupuesto, la Junta de Gobierno o cuerpo rector de la corporación pública que se trate, o del Alcalde para el municipio correspondiente. Para efectos únicos de la aplicación de este Artículo el término Estado incluirá el Estado Libre Asociado de Puerto Rico, las agencias e instrumentalidades, corporaciones públicas y los municipios. **Los planes de pago serán realizados conforme a los siguientes términos:**

[...]

(c) **Si la cantidad adeudada por el Estado, corporación pública o por un municipio fuere mayor a un millón (1,000,000.00) de dólares, pero menor o igual a siete millones (7,000,000.00) de dólares, podrá ser satisfecha mediante un plan de pago que comprenderá entre cuatro (4) años y un (1) día a siete (7) años desde que la obligación de pago advenga final y firme**.

[...]

(g) De no haber disponibilidad de fondos para honrar el plan de pagos en un año fiscal particular, este será aplazado para el próximo año fiscal, teniendo el efecto de extender automáticamente dicho plan por el número de pagos no realizados.

[...] (Énfasis nuestro).

De otra parte, el Artículo 29 de la Ley 66, 3 LPRA sec. 9142, dispone lo siguiente:

Artículo 29.-Acciones contra el Estado, Municipios y funcionarios.

No se podrá compeler a las agencias o instrumentalidades del Estado, corporaciones públicas o municipios, funcionarios o empleados, a hacer pago alguno respecto a una sentencia o plan de pago previamente autorizado, cuando no existan fondos para ello por haberse agotado la asignación legislativa destinada a esos fines, por lo que **se prohíbe el embargo de fondos para hacer efectivo un fallo emitido contra el Estado**. La determinación de falta de fondos para realizar dicho pago deberá ser certificada por la agencia o instrumentalidades del Estado, corporación pública o municipio que se trate, y en caso de fondos que provengan de asignaciones legislativas, incluyendo del Fondo General, deberá ser confirmada por la Oficina de Gerencia y Presupuesto, cuya determinación al respecto será concluyente. **El remedio disponible cuando no existan fondos para el pago de sentencias será el pago de interés sobre la cantidad adeudada** conforme a lo

establecido en las Reglas de Procedimiento Civil y las leyes especiales aplicables.
**Lo dispuesto en este Artículo también le será aplicable a los Municipios.** (Énfasis nuestro).

Por otro lado, de conformidad con la Ley 205-2004, según enmendada (*Ley Orgánica del Departamento de Justicia* o "Ley 205"), 3 LPRA sec. 291, *et seq.* y con la Ley 66, *supra*, se aprobó la Carta Circular Núm. 2020-07 del Departamento de Justicia sobre Normas a Seguir para los Planes de Pago Propuestos (la "Carta Circular"), vigente desde el 18 de diciembre de 2020.

La Carta Circular tiene el fin de establecer las guías, normas y términos que tutelan la elaboración y redacción de los planes de pago que deberán ser cumplidos por las entidades gubernamentales y los municipios en aquellos casos en que se emitan en su contra sentencias finales y firmes, según constan en el Artículo 28 de la Ley 66, *supra*, y la Ley 3-2017, 3 LPRA sec. 9391 *et seq.*[2]

IV.

En el ejercicio de nuestra discreción, enmarcada en un análisis de los factores de la Regla 40 de nuestro Reglamento, *supra*, hemos determinado declinar la invitación de Econo a intervenir con la decisión recurrida.

A la luz de la legislación pertinente, arriba citada, el TPI actuó de forma razonable y válida al determinar que la sentencia será satisfecha de conformidad con el plan de pago aprobado por el Departamento de Justicia.

Contrario a lo planteado por Econo, la Orden no es incompatible con la sentencia en este caso. Ni la sentencia del TPI, ni la de este Tribunal[3], dispone sobre una forma particular en que tendría que ejecutarse la misma.

---

[2] La Ley 3-2017, *supra*, estuvo vigente hasta el 1 de julio de 2021, a menos que otra cosa dispusiera la Asamblea Legislativa.

[3] Aclaramos que el Tribunal de Apelaciones no ordenó el embargo de cuentas del CRIM. Véanse, Sentencia de 30 de junio de 2023 (KLAN202300365) y Sentencia de 29 de marzo de 2019 (KLCE201900085).

Tampoco tiene pertinencia que las partes hubiesen incluido, en el Acuerdo Final que suscribieron en el 2015, un método de devolución del dinero en controversia.  La sentencia en este caso no ordenó el cumplimiento específico con este método de pago[4] y, en cualquier caso, tendría primacía la legislación que establece otros métodos de pago de obligaciones monetarias que surgen de sentencias finales y firmes.

En vista de lo anterior, el Municipio podía someter un plan de pago para la evaluación y autorización del Secretario de Justicia, tal y como lo establece el Artículo 28 de la Ley 66, *supra*.   No cometió error de derecho, ni abusó su discreción, el TPI al emitir la Orden.

V.

Por los fundamentos anteriormente expuestos, se deniega la expedición del auto de *certiorari* solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] Ello a pesar de que, en la demanda, Econo solicito el pago de lo adeudado en seis (6) pagos de $166,666.66.